## STATE OF FLORIDA v. SCHOSSLER
No. 82-211-AC

Eleventh Judicial Circuit, Dade County, Appellate Division

July 21, 1983

Jim Smith, Attorney General and Jack B. Ludin, Assistant Attorney General, for appellant.

Elliott Snyder, for appellee.

Before HENDERSON, NEWMAN and SHAPIRO, JJ.

PER CURIAM.

We are asked to review an Order Granting Defendant's Motion to Suppress certain evidence which Order was entered by the trial Court on July 21, 1982. For the reasons set forth herein, we affirm the decision. But we hasten to point out this affirmance is based solely on the facts of this case.

On February 11, 1982, John Schossler was stopped by a police officer after the police officer observed Schossler drive off the road. The defendant walked in a staggering manner, exhibited slurred speech, had bloodshot eyes and a strong odor of alcohol emanated from his breath. After failing the "finger to nose" and "straight line" tests administered by the detaining officer, defendant was arrested for driving under the influence of alcohol and transported to the police station. At the station, Schossler was read his *Miranda* rights by Officer Simkowitz

after which he advised the officer he wanted an attorney.[1] Thereafter, the officer asked Schossler if he would submit to certain physical tests.[2] Schossler agreed. He also voluntarily submitted to a breathalyzer test.

---

[1] "MR. SIMKOWITZ:    Seventh day of February, 1982.

Officer Mew, have you arrested Mr. Schossler for DUI pursuant to Florida Statute 316.193 subsection 1?

OFFICER MEW:·  Yes, and I request that you give him a breatholyzer. (sp)

OFFICER SIMKOWITZ:    Okay, Officer, you can have a seat.

Mr. Schossler, I am Officer Simkowitz, and I am conducting a criminal investigation on video tape.

Do you understand that you have been arrest (sp) for driving under the influence?

MR. SCHOSSLER:    Yes, sir.

OFFICER SIMKOWITZ:    I am going to read you your constitutional rights.

You have the right to remain silent. The constitute (sp) requires that I so inform you of this right.

You need not talk to me if you do not wish to do so.

You do not have to answer any of my questions.

Should you talk to me, anything you might say in answer to my questions can and will be introduced into evidence in court against you.

If you want an attorney present at this time, or any time hereafter, you are entitled to such counsel.

If you cannot afford to pay for counsel, we'll furnish you with counsel if you so desire.

Knowing you rights as I have just related them to you, are you now willing to answer any questions without having an attorney present?

MR. SCHOSSLER:    I would like an attorney

OFFICER SIMKOWITZ:    All right, do you have an attorney that I can call for you?

MR. SCHOSSLER:    No.

OFFICER SIMKOWITZ:    If you want an attorney appointed, the judge is the one that appoints an attorney.

MR. SCHOSSLER:    How long does that take?

OFFICER SIMKOWITZ:    You have to go to Court."

[2] "I'm not going to ask you any questions at this time, but I'm going to offer you three voluntary physical tests. Are you willing to take these?

MR. SCHOSSLER:    Yeah."

The case came on for trial on May 18, 1982. A motion to suppress was filed which motion sought suppression of the results of the physical tests and the breathalyzer test contending that the tests should not have been administered after the defendant requested counsel. The lower Court, after hearing argument, granted the motion to suppress. This appeal ensued.

This Court has not been presented with any case law discussing the balance between Constitutional Sixth Amendment right to counsel per *Miranda v. Arizona,* 384 U.S.436, 86 S.Ct. 1602 and Constitutional Fourth Amendment protection as discussed in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826. In *Schmerber,* the question presented was whether the chemical analysis on a blood sample taken over objection of the defendant and introduced into evidence should have been excluded as the product of an unconstitutional search and seizure. The Supreme Court concluded there existed no violation of constitutional rights under the Fourth and Fourteenth Amendments to the Constitution and the results were properly admitted into evidence. The Court briefly addressed the Sixth Amendment Right to Counsel but concluded that the individual had no such right.

It is the opinion of this Court based on the procedures followed in this case, it is not necessary to pass directly on this issue. Under the proper circumstances we would be inclined to hold where this is proper compliance with the Florida implied consent statute, the results of such testing would be admissible whether or not the individual requested counsel.

Section 322-261 (1) (a) Fla. Stat. provides, in part, as follows:

"Any person who shall accept the privilege . . . of operating a motor vehicle within this state shall by so operating such vehicle be deemed to have given his consent to submit to an approved chemical test of his breath . . . if he is lawfully arrested for any offense allegedly committed while . . . under the influence of alcoholic beverages. The test shall be incidental to a lawful arrest and administered at the request of a police officer . . . Such person *shall* be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of 3 months."

The question becomes what happens if the individual consents to the testing before being advised of his "right" to refuse, or, as in this case, is never informed of his right to refuse?

The Florida Supreme Court in *Sambrine v. State,* 386 So.2d 546, 548 (Fla. 1980), stated, "Any careful reading of section 322.261 leads to the inescapable conclusion that a person is given the right to refuse testing." But how is an individual able to exercise that right if he is not told it exists? It is obvious he cannot. The statute gives a conscious person the right to refuse to take a chemical test if he is willing to suffer a three month suspension of his driving privilege. The driver is entitled to know his options *before* being forced to choose. To hold otherwise is to suggest that the Legislature created a right to refuse testing and, at the same time, devised a capricious scheme to induce unknowing waiver of the right. *State v. Gunn,* 408 So.2d 647,649 (dissenting opinion — Fla.4th D.C.A. 1982). In *Gunn,* the statutory warning was not given. Uninformed of his right to refuse the test, Gunn submitted to the breathalyzer. His motion to suppress the results was denied by the trial Court which denial was upheld by the majority on appeal. As so ably stated by Judge Hurley in his dissent however, the majority opinion eviscerates the statute. The clear legislative intent has been more than ignored. The statute has been emasculated. Any other interpretation flies in the face of elementary logic. Since Officer Simkowitz failed to advise Schossler of the implied consent law and since Schossler was not made aware of his ability to refuse the testing, acquiescense was not intelligently given.

There is nothing in the record to suggest that Schossler was intoxicated beyond the point of being able to understand that which was explained to him. In fact, the transcript of the test reflects his responses which appear coherent.

It is the opinion of this Court that Schossler's contention that his invocation of right to counsel precluded the admission of the test results is incorrect. *Schmerber v. California,* supra. However, due to the testing officer's failure to comply with the implied consent law, suppression of the test results was proper. The decision of the trial Court is affirmed.

It is so ordered.